SCARTELLI OLSZEWSKI, P.C.
A Professional Corporation
By:      Melissa A. Scartelli, Esquire
          Peter Paul Olszewski, Jr., Esquire
ATTORNEYS FOR PLAINTIFFS
411 Jefferson Avenue
Scranton, PA  18510
T: (570) 346-2600
F: (570) 346-9077
IDENTIFICATION #52441
IDENTIFICATION #41286

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**BERT R. TERYSEN, and his wife**
**SARA A. TERYSEN**
**284 Callicoon Road**
**Damascus, Wayne County, PA  18415**                    **CIVIL ACTION - LAW**

                    **PLAINTIFFS,**                          **JURY TRIAL DEMANDED**

-v-

**MCNEILUS TRUCK &**
**MANUFACTURING, INC.**
**524 East Highway Street**
**P.O. Box 70**
**Dodge Center, Minnesota 55927**

**OSHKOSH/MCNEILUS TRUCK AND**
**MANUFACTURING, INC.**
**524 County Road 34 East**
**Dodge Center, Minnesota 55927**

**OSHKOSH CORPORATION**
**1917 Four Wheel Drive**
**Oshkosh, Wisconsin 54902**

**OSHKOSH INC.**
**Waterfront Center 1050 Western**
**PO Box 0510**
**Muskegon, Michigan 49443**

**OSHKOSH SPECIALTY**
**VEHICLES, INC.**
**2307 Oregon Street**
**PO Box 2566**

Oshkosh, Wisconsin 54903

**OSHKOSH SPECIALTY**
**VEHICLES, LLC.**
**2307 Oregon Street**
**PO Box 2566**
**Oshkosh, Wisconsin 54903**

**DEFENDANTS.**

## COMPLAINT

AND NOW, come the Plaintiffs, Bert R. Terysen and his wife, Sara A. Terysen, by and through their counsel, SCARTELLI OLSZEWSKI, P.C., and hereby complain against Defendants, McNeilus Truck & Manufacturing, Inc., Oshkosh/McNeilus Truck and Manufacturing, Inc., Oshkosh Corporation, Oshkosh, Inc., Oshkosh Specialty Vehicles, Inc., and Oshkosh Specialty Vehicles, LLC. This is a civil action seeking monetary damages against Defendants for committing acts or omissions of strict product liability, negligence, breach of warranties, and recklessness against Plaintiffs.

## PARTIES

1.     Plaintiff, Bert R. Terysen, (hereinafter referred to as "Plaintiff Terysen") is an adult and competent individual residing at 284 Callicoon Road, Damascus, Wayne County, Pennsylvania 18415.

2.     Plaintiff, Sara A. Terysen, wife of Plaintiff Bert R. Terysen, is an adult and competent individual residing at 284 Callicoon Road, Damascus, Wayne County, Pennsylvania 18415.

3.     At all times material hereto, Plaintiff Terysen was employed by Wayne County Ready Mix located at 379 Grimms Road, Honesdale, Wayne County, Pennsylvania 18415 as a concrete delivery truck driver.

2

4.      Defendant, McNeilus Truck & Manufacturing, Inc. (hereinafter referred to as "McNeilus"), is a Corporation, incorporated in Minnesota, with its principal place of business located at 524 East Highway Street P.O. Box 70, Dodge Center, Minnesota 55927, and a branch office located at P.O. Box 219, 941 Hemlock Road, Morgantown, Pennsylvania 19543.

5.      Defendant, Oshkosh/McNeilus Truck and Manufacturing, Inc. (hereinafter referred to as "Oshkosh"), upon information and belief, is a Wisconsin Corporation with its principal place of business located at 524 County Road 34 East, Dodge Center, Minnesota 55927.

6.      Defendant, Oshkosh Corporation (hereinafter referred to as "Oshkosh"), formerly Oshkosh Truck, is a Corporation, incorporated in Wisconsin, with its principal place of business located at 1917 Four Wheel Drive, Oshkosh, Wisconsin 54902.

7.      Defendant, Oshkosh Inc. (hereinafter referred to as "Oshkosh"), is a Corporation, incorporated in Michigan, with a principal place of business located at Waterfront Center 1050 Western, P.O. Box 0510, Muskegon, Michigan 49443.

8.      Defendant, Oshkosh Specialty Vehicles Inc. (hereinafter referred to as "Oshkosh"), is a corporation, incorporated in Wisconsin, with a principal place of business located at 2307 Oregon Street P.O. Box 2566, Oshkosh, Wisconsin 54903.

9.      Defendant, Oshkosh Specialty Vehicles LLC (hereinafter referred to as "Oshkosh"), upon information and belief, is a Limited Liability Corporation with a principal place of business located at 2307 Oregon Street P.O. Box 2566, Oshkosh, Wisconsin 54903.

10.     Oshkosh is a company that designs and builds specialty commercial trucks, including front-discharge cement mixers, including the one that injured Plaintiff Terysen as will be further described herein.

11.     Defendant McNeilus is a subsidiary of Defendant Oshkosh that designs and builds specialty commercial trucks and components including front-discharge cement mixers, including the one that injured Plaintiff Terysen as will be further described herein.

12.     Defendant McNeilus and its parent company Defendant Oshkosh are partners in designing, engineering, building, fabricating, selling, and supplying front discharge cement mixers, including the one that injured Plaintiff Terysen as will be further described herein.

## JURISDICTION AND VENUE

13.     Federal Jurisdiction is grounded in 28 U.S.C §1332, complete diversity of the Parties and the matter in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00). The Court also has pendant jurisdiction as provided under 28 U.S.C. §1367(a).

14.     The Federal Court for the Middle District of Pennsylvania is the correct forum for this action as both Plaintiffs reside in Wayne County, Pennsylvania and the incident which forms the basis of this action occurred in Wayne County, Pennsylvania.

## FACTS

15.     On March 1, 2019, Plaintiff Terysen was severely and permanently injured in the course and scope of his employment while using a 2008 Oshkosh Front Discharge Concrete Mixer, the VIN 10TFAAP276S090745 hereinafter "Cement Mixer," which was manufactured, designed, fabricated, sold, and distributed by the Defendants.

16.     On the aforesaid date, Plaintiff Terysen drove the Cement Mixer to a jobsite, located on Dillmuth Road, Damascus Township, Wayne County, Pennsylvania, where he delivered and discharged concrete.

17.     The manual for the Cement Mixer contains a provision for "Mixer Clean-Up", which is described as a "vital part" of the maintenance requirement for the cement mixer. The manual recommends that the mixer and chassis be washed down thoroughly after each load is discharged. It also states, "Special care should be taken to make sure all residual concrete is removed from the mixer drum, charge hopper, and discharge chute after each use to ensure that a build-up of dried concrete does not accumulate."

18.     The manual is silent with respect to the method or manner of performing mixer clean–up.

19.     On the aforesaid date in question, and as recommended in the manual, Plaintiff Terysen was performing a mixer clean-up of the front discharge drum for residue concrete in a manner customary in the industry.

20.     Plaintiff Terysen used the catwalk above the cab of the Cement Mixer and used the provided water hose on the catwalk for mixer clean-up of the residual concrete from the discharge drum.

21.     Plaintiff Terysen was holding the provided water hose with his right hand and supported himself with his left hand while washing out the rotating discharge drum.

22.     There was no accessible, dedicated grab bar or handle for Plaintiff Terysen to hold on to while washing out the drum.

23.     Suddenly and without warning to Plaintiff Terysen, there was a loss of air pressure to the cement mixer causing the elevated charge hopper to fall.

24.     The cement mixer was equipped with a barely audible alarm signaling a loss of air pressure, which could only be heard from inside the cab and was impossible to hear outside the cab while standing on the catwalk on top of the Cement Mixer.

25.     Plaintiff Terysen could not hear the air pressure alarm from his location, was unaware of the loss of air pressure and the falling charge hopper while performing the necessary mixer clean-up.

26.     Plaintiff sustained a serious, permanent, disabling, and disfiguring crush injury to his left forearm, wrist, and hand when the elevated charge hopper fell, trapping his left forearm, wrist, and hand between the charge hopper and the charge hopper safety support.

27.     Plaintiff Terysen was unable to extricate his left upper extremity due to the loss of air pressure and the weight of the charge hopper.

28.     After yelling for help for several minutes, nearby workers heard Plaintiff Terysen and tried to extricate him. Ultimately Plaintiff Terysen was trapped for 20-25 minutes.

29.     Plaintiff Terysen suffered serious, permanent, disabling, and disfiguring injuries to his left upper extremity as a direct and proximate result of the negligence and strict liability of Defendants for the design defects of the Cement Mixer.

30.     The Cement Mixer was designed, produced, marketed, sold, distributed, and supplied in a defective condition because it failed to have a safe support handle/grab bar that would provide support for the operator and protection from a foreseeable loss of air pressure and a falling charge hopper.

31.     The Cement Mixer was designed, produced, marketed, sold, distributed, and supplied in a defective condition in that it failed to have an audible alarm that could be heard on the catwalk to alert the operator to a loss of air pressure, so allow him to protect himself from a falling charge hopper.

32.     The Cement Mixer was designed, produced, marketed, sold, distributed, and supplied in a defective condition in that it failed to have a true safety support to prevent the charge hopper from falling and injuring an operator in the event of a foreseeable loss in air pressure.

33.     The Cement Mixer was designed, produced, marketed, sold, distributed, and supplied in a defective condition in that it failed to have adequate warnings on the catwalk to warn the operator of the foreseeable danger of a loss of air pressure that would cause the elevated charge hopper to fall.

34.     The Cement Mixer was designed, produced, marketed, sold, distributed, and supplied in a defective condition in that it failed to have an automatic safety support lock for an elevated charge hopper that would protect the operator while performing a mixer clean-up.

35.     The Cement Mixer was designed, produced, marketed, sold, distributed, and supplied in a defective condition in that it had an obscure, unclear, confusing warning decal to "put the charge hopper safety support in place" when there was nothing for the operator to in fact put in place.

36.     The Cement Mixer was defective and unreasonably dangerous in that it failed to protect operators from the dangers associated with a foreseeable loss of air

pressure while performing regular and customary duties on the catwalk, such as a mixer clean-up.

37.     The Cement Mixer was defective and unreasonably dangerous in that it failed to protect operators from the dangers associated with a foreseeable pinch point between the charge hopper and the charge hopper safety support.

38.     The dangers associated with unguarded pinch points were known in Defendants' industry for decades.

39.     Defendants were negligent, careless, and reckless in failing to incorporate existing technology known and available in the industry such as audible alarms, grab handles, handrails, and safety supports.

40.     Defendants were specifically aware of the dangers of a falling charge hopper due to loss of air pressure because both the manual for the Cement Mixer and the Cement Mixer itself contain a confusing, obscure, inapplicable "safety decal" (Serial No. 1840890) which reads as follows:


**<u>WARNING</u>**

**Always put the CHARGE HOPPER SAFETY SUPPORT in place:**

      **(1) Before you work in this area, and**

      **(2) If the charge hopper is in UP position.**

**Charge hopper falls suddenly if air pressure is lost.**

**You can be killed or seriously injured.**

41.     Despite having the above "safety decal," Defendants knowingly failed to provide something to "put in place" to protect an operator when the charge hopper is in the **UP** position.

42.     Despite having the above "safety decal," Defendants knowingly failed to provide a handrail/grab bar to protect an operator from the dangers associated with a falling charge hopper.

43.     Despite having the above "safety decal," Defendants knowingly failed to eliminate the known pinch point between the charge hopper and the safety support.

44.     Despite having the above "safety decal," Defendants knowingly designed, fabricated, sold, supplied a charge hopper safety support that provided support for the charge hopper only when it is in the **DOWN** position.

45.     Despite having the above "safety decal," Defendants knowingly failed to design, fabricate, sell, or supply a charge hopper safety support for when the charge hopper is in the **UP** position.

46.     Defendants specifically KNEW of the exact danger posed to operators, such as Plaintiff Terysen, but failed to eliminate the danger, guard the danger, and/or adequately warn of the danger, and as a direct and proximate result of these failures Plaintiff Terysen was permanently harmed as set forth more specifically below.

47.     Despite having specific knowledge of the exact danger posed to Plaintiff Terysen herein, Defendants designed, fabricated, sold, shipped, supplied a defective charge hopper safety support that served as an unguarded pinch point which was unreasonably dangerous and highly likely to harm operators during a necessary mixer clean-up of the discharge drum.

48.     Defendants knowingly designed into the product a hazardous and potentially lethal pinch point thereby creating the dangerous defect that permanently injured Plaintiff Terysen.

49.     The Cement Mixer, including the charge hopper and safety support as designed, fabricated, sold, shipped, and supplied was defective and unreasonably dangerous and arrived at Plaintiff Terysen's place of employment in the same condition as was intended by Defendants.

50.     There were no alterations to the Cement Mixer with respect to the areas of defect from the time it was sold, supplied, and shipped to Wayne County Ready Mix up to the incident described herein.

51.     The use of the Cement Mixer by Plaintiff Terysen as it relates to this incident was as intended by Defendants.

52.     In the alternative, if it is determined that Plaintiff Terysen misused the Cement Mixer, said misuse or unintended use was foreseeable to Defendants such that Defendants had a duty to protect operators including Plaintiff Terysen.

53.     The risk of the defective design created by Defendants outweighed the benefits of the design.

54.     At all times relevant hereto, Defendants individually and/or through its officers, directors, employees, successors, predecessors, servants, franchisees, franchisors, distributors, sales forces, agents, ostensible agents, and/or agents of any and all other types, were in the business of designing, manufacturing, testing, distributing, selling, supplying, and marketing commercial trucks such as the Cement Mixer, and at all times material hereto said Defendants regularly conducted business in Pennsylvania.

55.     Prior to and up to the date of the incident on March 1, 2019, Defendants owed a duty to design, develop, fabricate, supply, and sell a safe Cement Mixer free of defects.

56.     Defendants could foresee, based upon the defective design of the Cement Mixer, that there was a high likelihood of harm to operators and employees from a falling charge hopper due to loss of air pressure while performing a customary and necessary mixer clean-up of the discharge drum, which is required after each delivery and discharge of cement.

57.     Defendants failed to perform a risk utility analysis of the Cement Mixer of the foreseeable uses as well as misuses to eliminate any element rendering the Cement Mixer unsafe.

58.     In the alternative Defendants performed a risk utility analysis but failed to correct the defects identified with the foreseeable use of the product.

59.     Defendants designed, fabricated, sold, supplied, and shipped a Cement Mixer that lacked elements necessary to make it safe for its intended and foreseeable use.

60.     Defendants had a program called the "McNeilus Continuous Improvement Process" whereby they would issue Technical Service Information Bulletins to its customers as part of "constant focus on continuous improvement."

61.     Defendants had a duty to warn customers of safety defects, such as the defects set forth herein, and take measures to correct the defect in order to prevent foreseeable harm to operators such as Plaintiff Terysen.

11

62.     At no time following purchase/delivery of the Cement Mixer did  Defendants inform or warn of the defects or take any action whatsoever to correct the defects set forth herein.

63.     Defendants were negligent and reckless in the design, manufacture, assembly, distribution, sale, and introduction into the stream of commerce of the Cement Mixer.

64.     The aforementioned incident was factually and directly caused by defects in the Cement Mixer that were known to Defendants, including defective design and defective warnings.

65.     Technologically and economically feasible alternative designs and warnings were readily available but were deliberately ignored by Defendants; implementation of the economically feasible alternative designs and warnings would not have altered the use or utility of the product and would not have materially altered the price of the product.

66.     Defendants deliberately chose to ignore technically and economically feasible alternative designs and warnings of which they were aware that would have prevented operators from being exposed to foreseeable serious injury such as occurred to the Plaintiff Terysen.

67.     As a direct and proximate result of the negligence, carelessness, and recklessness, strict product liability and breach of implied warranties of Defendants, Plaintiff Terysen sustained the following serious, permanent, disabling, and disfiguring injuries including but not limited to the following:

    a.  Crush injury to left forearm;

    b.  Crush injury to left wrist;

c.  Crush injury to left hand and fingers;

d.  Left radial nerve palsy;

e.  Traumatic injuries to left median, radial, and ulnar nerves;

f.   Left upper extremity paresthesia and wrist drop;

g.  Left upper extremity median, radial, and ulnar nerve paresthesia;

h.   Neuropraxia injury to left upper extremity;

i.   Numbness and weakness to left upper extremity forearm, wrist, hand and fingers;

j.  Finger contractures;

k.  Tendon adhesions in the fingers of his left hand;

l.  Decreased sensation to left upper arm, forearm, wrist, hand and fingers;

m. Complex Regional Pain Syndrome;

n.  Left shoulder injury;

o.  Left shoulder impingement;

p.  Left shoulder weakness;

q.  Limited range of motion left shoulder;

r.   Chronic pain;

s.  Left wrist drop;

t.   Left hand contractures;

u.  Left hand and wrist stiffness;

68.   As a result of Defendants' negligence, carelessness, and recklessness, Plaintiff Terysen underwent nonsurgical treatment of his injuries in the form of injections, physical therapy, analgesics, and splinting.

69.     As a result of Defendants' negligence, carelessness, and recklessness, Plaintiff Terysen underwent surgical treatment including:

    a.   Left carpal tunnel release;

    b.   Left cubital tunnel release with subcutaneous transposition of the ulnar nerve;

    c.   Tenosynovectomy flexor tendons of the distal forearm and carpal tunnel;

    d.   Left index, long, ring and small PIP capsulectomy;

    e.   Left index, long, ring and small extensor tenolysis;

    f.   Left index, long, ring and small flexor profundus and superficialis tenolysis.

70.     Plaintiff Terysen will require ongoing non-surgical and surgical treatment for an indefinite time into the future to his great detriment and loss for which a claim is made herein.

71.      Plaintiff Terysen is left with chronic pain, permanent stiffness, limitation, weakness, numbness, tingling, swelling, warmth, popping, clicking, and radiating sensations to his left upper extremity, including radiating injuries to thumb, index, middle, fourth, and fifth fingers for which a claim is made herein.

72.     Plaintiff Terysen is left with permanent numbness in his left upper extremity.

73.     Plaintiff Terysen is left with a permanent left wrist drop.

74.     Plaintiff Terysen in left with permanent limitation in his left upper extremity including his shoulder, forearm, wrist, hand, and fingers.

75.     As a direct and proximate result of Defendants negligence, carelessness, and recklessness, and the unsafe condition of the aforesaid Cement Mixer, Plaintiff

sustained serious, permanent, disabling, and disfiguring injuries for which a claim is made herein.

76.     As a direct and proximate result of Defendants' negligence, carelessness, and recklessness, Plaintiff has undergone great physical pain and mental anguish that he will continue to endure the same for an indefinite time in the future to his great detriment and loss for which a claim is made herein.

77.     As a direct and proximate result of the Defendants' negligence, carelessness, and recklessness Plaintiff Terysen has been unable to attend to his usual daily duties and occupations and will be unable to attend to the same for an indefinite time in the future to his great detriment and loss for which a claim is made herein.

78.     As a direct and proximate result of the Defendants' negligence, carelessness, and recklessness Plaintiff Terysen has suffered a severe loss of his earnings and an impairment of his earning capacity and power for which a claim is made herein.

79.     As a result of the aforesaid injuries caused by Defendants' negligence, carelessness, and recklessness Plaintiff Terysen has been obliged to expend great sums of money for medicine, medical care, and attention in and about an effort to affect a cure for his aforesaid injuries and he will be compelled to expend such sums for the same purpose for an indefinite time into the future to his great detriment and loss for which a claim is made herein.

80.     As a result of the aforesaid injuries caused by Defendants' negligence, carelessness, and recklessness Plaintiff Terysen has been deprived of his usual and

customary enjoyments of life and will continue to experience said loss of enjoyment of life into the future for which a claim is made herein.

81.    The incident in question occurred as a result of the negligence, carelessness, and recklessness of Defendants and in no manner or fashion as a result of any action or inaction on the part of Plaintiffs.

**WHEREFORE,** Plaintiffs, Bert R. Terysen and his wife, Sara A. Terysen, demand judgment against Defendants McNeilus Truck & Manufacturing, Inc., Oshkosh/McNeilus Truck and Manufacturing, Inc., Oshkosh Corporation, Oshkosh Inc., Oshkosh Specialty Vehicles, Inc., and Oshkosh Specialty Vehicles, LLC. for compensatory and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000.00) together with the costs of this action and any other relief deemed just and equitable.

<u>**COUNT I– NEGLIGENCE**</u>
<u>**PLAINTIFF BERT R. TERYSEN v. ALL DEFENDANTS**</u>

82.    Plaintiff Terysen incorporates herein by reference paragraphs 1-81 and all the allegations of this Complaint as though fully set forth at length herein.

83.    The negligence, carelessness, and recklessness of Defendants consisted of the following:

        a.  Failing to design, manufacture, and sell the aforesaid Cement Mixer and its component parts with due care;

        b.  Failing to equip the aforesaid Cement Mixer with adequate safety devices for use and safety;

        c.  Failing to test and inspect the aforementioned Cement Mixer to determine whether it could be cleaned without injuring operators;

d.  Failing to instruct as to the proper measures to clean the Cement Mixer without causing injury to those who use its product;

e.  Failing to warn or adequately warn of the dangers while cleaning the Cement Mixer and operation of the charge hopper;

f.  Failing to equip the aforementioned Cement Mixer with an alarm system that would alert the operator while standing on the platform cleaning the Cement Mixer of a loss in air pressure that would cause the charge hopper to lower onto the operator causing serious injuries and damages;

g.  In equipping the aforesaid Cement Mixer with a defective alarm system that is only audible from inside the cab of the unit and inaudible to an operator on the catwalk cleaning the cement mixer;

h.  Failing to install handles, grab bars, or other safety devices on the catwalk so that the operator can have a safe place to hold on in order to perform a mixer clean-up of the Cement Mixer free and clear of the charge hopper;

i.  Failing to have a manual support or charge hopper prop to prevent a raised charge hopper from lowering onto the operator when there is a loss in air pressure;

j.  Failing to have a charge hopper support system to maintain the charge hopper in the up position where there is a loss in air pressure during performance of a mixer clean-up of the Cement Mixer;

k.  Failing to have adequate warnings in place on the equipment to alert the operator that a sudden loss of air pressure can lower the charge hopper without warning and cause injuries to the operator;

l.  Failing to have a position lock in place to maintain the charge hopper in the elevated position during a routine mixer clean-up in the event of loss in air pressure for the charge hopper;

m.  Failing to have a lockout-tagout system for the operator to initiate during a mixer clean-up of the Cement Mixer so as not to become injured by the charge hopper in the case of a loss in air pressure to the unit;

n.  Failing to design and manufacture the aforementioned Cement Mixer to minimize the possibility of a sudden drop of the charge hopper due to loss of air pressure;

o.  Failing to incorporate a safety bar to maintain the charge hopper in the up position for operators to perform a mixer clean-up of the Cement Mixer.

p.  Failing to design, manufacture, and sell the Cement Mixer with applicable design and safety features that allow an operator to hold on with safety while performing a mixer clean-up and maintain a safe distance from the charge hopper;

q.  Designing, manufacturing, selling, and/or supplying a Cement Mixer, which lacked all elements necessary to ensure its safe use;

r.  Designing, manufacturing, selling, or supplying a Cement Mixer with a defective and dangerous design with insufficient protection to prevent

the charge hopper from descending onto the operator while performing a routine mixer clean-up of the Cement Mixer;

s.  Designing, manufacturing, selling, and/or supplying the Cement Mixer without a safety device in place to prevent the charge hopper from descending onto an operator while performing a mixer clean-up of the Cement Mixer;

t.  Designing, manufacturing, selling, and/or supplying a Cement Mixer without any safety devices or safety bars to maintain the charge hopper in the up position during a loss of air pressure to the Cement Mixer;

u.  Designing, manufacturing, selling, and/or supplying a Cement Mixer with other defects making it unsafe for its intended use and foreseeable misuse;

v.  Designing, manufacturing, selling, and supplying a Cement Mixer in a defective and unreasonably dangerous condition lacking all elements necessary to ensure its safe use;

w.  In recognizing that the truck may experience a sudden loss of air pressure requiring a safety support for the charge hopper yet failing to provide the safety support to protect operators performing a mixer clean-up of the Cement Mixer;

x.  In failing to incorporate a clear warning decal on the Cement Mixer that would be seen and understood by operators with respect to the dangers of maintaining the charge hopper in the up position during a mixer clean-

up when a sudden loss of air pressure can cause the charge hopper to descend onto the operator;

y.  In supplying the Cement Mixer with a safety bar that supports the charge hopper in the lower position and not in the upper position which is unreasonably dangerous and defective;

z.  In failing to equip the Cement Mixer with a safety bar lock that automatically locks the charge hopper in the up position during performance of a mixer clean-up of the Cement Mixer;

aa. In selling, supplying, distributing, a cement mixer which is defective and unreasonably dangerous;

bb. In failing to provide a safety support for use by operators to hold on to when performing a mixer clean-up of the Cement Mixer;

cc. In failing to perform a risk utility analysis in order to identify dangers and defects associated with the use of the product in order to eliminate defects and incorporate all elements necessary to make the product safe;

dd. In performing a risk utility analysis and failing to cure the dangers and defects identified with the foreseeable use of the product in order to make the product safe;

ee. In failing to issue a Technical Service Information Bulletin with respect to the defects set forth herein and take action to eliminate the defects;

ff. In failing to alert customers such as Plaintiff Terysen of the defects as part of the "McNeilus Continuous Improvement Process."

gg. In failing to provide any instruction whatsoever of recommended methods of mixer clean-up so as to eliminate or minimize the risk of harm to employees and operators;

hh. In failing to provide an emergency release of the charge hopper when it falls due to lack of air pressure; and

ii. In failing to provide an emergency alarm/notification on the catwalk for an employee or operator to activate to signal for emergency assistance.

84.    The Cement Mixer was designed, manufactured, distributed, supplied, and sold by Defendants in a defective and dangerous condition lacking all elements necessary to ensure its safe use.

**WHEREFORE,** Plaintiff Bert R. Terysen demands judgment against Defendants McNeilus Truck & Manufacturing, Inc., Oshkosh/McNeilus Truck and Manufacturing, Inc., Oshkosh Corporation, Oshkosh Inc., Oshkosh Specialty Vehicles, Inc., and Oshkosh Specialty Vehicles, LLC. for compensatory and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000.00) together with the costs of this action and any other relief deemed just and equitable.

## COUNT II– STRICT LIABILITY
## PLAINITIFF BERT R. TERYSEN v. ALL DEFENDANTS

85.    Plaintiff Terysen incorporates by reference paragraphs 1-85 of this Complaint as if fully set forth herein at length.

86.    Defendants designed, engineered, manufactured, fabricated, assembled, distributed, sold, and/or shipped the subject product.

21

87.     The subject product was defective and unsafe when it left the control of Defendants because it was unsafe for its reasonable and foreseeable intended uses.

88.     The subject product was defective, unsafe, and unreasonably dangerous as designed, engineered, manufactured, assembled, sold, and/or shipped by Defendants as follows:

       a. It lacked safe grab bars/handrails for operators to use during a mixer clean-up;

       b. It lacked an audible alarm to alert the operator on the catwalk of loss of air pressure;

       c. It lacked a safety support to maintain the charge hopper in the **UP** position in the event of a loss of air pressure;

       d. It lacked an automatic safety bar to hold the charge hopper in the **UP** position;

       e. It contained a dangerous unguarded pinch point between the charge hopper and the charge hopper safety support;

       f. It contained a charge hopper safety support for the **DOWN** position of the charge hopper and not for the **UP** position;

       g. It lacked an adequate warning for loss of air pressure when the charge hopper is in the **UP** position; and

       h. It contained a confusing, inappropriate, obscure warning with respect the charge hopper safety support;

       i. It lacked an emergency release for the charge hopper; and

j. It lacked an emergency alarm/notification on the catwalk for an employee or operator to activate to signal for emergency assistance.

89.     The subject product was not equipped with every safety device necessary to make the subject product safe for its reasonably foreseeable and intended uses when sold and placed into the stream of commerce by Defendants.

90.     The aforementioned subject product was unreasonably dangerous and defective pursuant to the doctrine of strict liability as established by Pennsylvania Law § 402A of the Restatement (2nd) of Torts.

91.     Defendants are strictly liable for placing into the stream of commerce a defective and unsafe product pursuant to the laws of Strict Liability in the Commonwealth of Pennsylvania.

92.     Defendants are strictly liable for placing into the stream of commerce a defective and unsafe product pursuant to the doctrines of strict liability as established by the Pennsylvania Supreme Court's holding in **Tincher v. Omega Flex, Inc., 104 A. 3d. 328 (Pa. 2014).**

93.     The subject product was in a defective condition under the Consumer Expectation Standard and in accordance with Pennsylvania substantive law of Product Defect, specifically since the danger was unknowable and unacceptable to Plaintiff Terysen and the ordinary consumer. The defect was a direct and proximate cause of the injuries and damages to Plaintiff Terysen as set forth in this Complaint.

94.     The subject product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended way.

95.    The subject product was in a defective condition under the Risk Utility Test Standard and in accordance with Pennsylvania substantive law of Product Defect specifically since the defect was a direct and proximate cause of the injuries and damages to Plaintiff Terysen as set forth in this Complaint.

96.    The subject product was defective, unsafe, and unreasonably dangerous because the probability and seriousness of harm caused by the design of the subject product without adequate features such as an appropriate alarm, an appropriate hand support/grab bar, an appropriate safety device to prevent lowering of the charge hopper in response to a loss of air pressure, an appropriate safety support for the UP position of the charge hopper, and  appropriate warnings outweighed the burden or cost of making the product safe.

97.     Designing, fabricating, installing, and providing adequate warnings and other safeguards/devices mentioned above outweighed the burden or cost that would be incurred by Defendants in taking the necessary design remediation precautions prior to selling, distributing, and supplying said product.

98.    The subject product was defective, unsafe, and unreasonably dangerous because it failed to comply with the Consumer Expectation and Risk Utility Tests as set forth by the Pennsylvania Supreme Court holding in **Tincher v. Omega Flex, Inc., 104 A. 3d. 328 (Pa. 2014).**

99.    As a direct and proximate result of Defendants and the unsafe condition of the aforesaid subject product, Plaintiff Terysen sustained serious, permanent, disabling, and disfiguring injuries including the crush injury and sequalae to the left upper extremity, including left shoulder, forearm, wrist, hand, and fingers.

**WHEREFORE,** Plaintiff Bert R. Terysen demands judgment against Defendants McNeilus Truck & Manufacturing, Inc., Oshkosh/McNeilus Truck and Manufacturing, Inc., Oshkosh Corporation, Oshkosh Inc., Oshkosh Specialty Vehicles, Inc., and Oshkosh Specialty Vehicles, LLC. for compensatory and punitive damages in an amount in excess of $75,000.00 together with the costs of this action and any other relief deemed just and equitable.

## COUNT III– BREACH OF EXPRESS AND IMPLIED WARRANTIES PLAINTIFF BERT R. TERYSEN v. ALL DEFENDANTS

100. Plaintiff incorporates by reference paragraphs 1-99 of this Complaint as if fully set forth herein.

101. At a time prior to March 1, 2019, Defendants expressly represented or in some other manner expressly warranted the subject product and its component parts are reasonably fit for the purposes intended and were of merchantable quality.

102. At a time prior to March 1, 2019, Defendants represented or warranted by implication the subject product and its component parts were reasonably fit for the purposes intended and were of merchantable quality.

103. The representations and warranties set forth in the preceding two paragraphs formed part of the bargain for selling the aforementioned subject product and were relied upon by Plaintiff Terysen when the product was used for its intended purposes.

104. Based upon information and belief, the express and implied warranties of Defendants were in substance that the subject product was safe for its reasonably foreseeable uses and foreseeable misuses.

105.   In truth and in fact the above representations were false.

106.   The above false warranties and misrepresentations caused serious, permanent, disabling, and disfiguring harm to Plaintiff Terysen as set forth more fully in this Complaint.

107.   The Cement Mixer was unfit, unsafe, not merchantable, and not fit for its particular purpose, for reasons that include, but are not limited to:

    a.   Being defective and unreasonably dangerous as described more fully herein;

    b.   Lacking the necessary elements to make it safe for use and/or containing elements that made it unsafe for use as described more fully herein;

    c.   Designing, manufacturing, distributing, supplying, and/or selling a defective and unreasonably dangerous product as more fully described herein;

    d.   Failing to incorporate technically and economically feasible alternative designs and/or safety features to minimize and/or eliminate the risk of injury as more fully described herein;

    e.   Failing to warn of the foreseeable dangers more fully described herein; and

    f.   Failing to design out the defects, guard against the defects, and warn of the defects as more fully described herein.

108.   In using the Cement Mixer Plaintiff Terysen relied upon the skill, judgment, and express and implied warranties of merchantability and fitness of Defendants.

26

109.   As a result of the breach of express and/or implied warranties by Defendants, Plaintiff Terysen suffered injuries and damages as set forth more fully above and incorporated herein by reference.

110.   Defendants had notice of the defects prior to the occurrence herein and took no measures to warn or cure the defects prior to the occurrence.

**WHEREFORE,** Plaintiff Bert R. Terysen demands judgment against Defendants McNeilus Truck & Manufacturing, Inc., Oshkosh/McNeilus Truck and Manufacturing, Inc., Oshkosh Corporation, Oshkosh Inc., Oshkosh Specialty Vehicles, Inc., and Oshkosh Specialty Vehicles, LLC. for compensatory and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000.00) together with the costs of this action and any other relief deemed just and equitable.

## COUNT IV– LOSS OF CONSORTIUM
## SARA A. TERYSEN v. ALL DEFENDANTS

111.   Plaintiff incorporates herein by reference paragraphs 1-110 of this Complaint as if fully set forth herein.

112.   As a result of the aforesaid injuries sustained by her husband, Bert R. Terysen, Plaintiff, Sara A. Terysen, lost and continues to lose the care, comfort, society, services, companionship, and earnings of her husband and will continue to lose such care, comforts, society, services, companionship, and earnings of her husband for an indefinite period of time in the future and a claim for consortium is hereby made.

**WHEREFORE,** Plaintiff Sara A. Terysen demands judgment against Defendants McNeilus Truck & Manufacturing, Inc., Oshkosh/McNeilus Truck and Manufacturing, Inc., Oshkosh Corporation, Oshkosh Inc., Oshkosh Specialty Vehicles, Inc., and Oshkosh

Specialty Vehicles, LLC. for compensatory and punitive damages in an amount in excess of seventy-five thousand dollars ($75,000.00) together with the costs of this action and any other relief deemed just and equitable.

Respectfully submitted,

**SCARTELLI OLSZEWSKI, P.C.**

*/s/ Melissa A. Scartelli*
Melissa A. Scartelli, Esquire

*/s/ Peter Paul Olszewski, Jr.*
Peter Paul Olszewski, Esquire
Attorneys for Plaintiffs